UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RONALD DALE McLELLAND, | ) | Civil Action No.: 4:08-cv-3430-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CITY OF NORTH MYRTLE BEACH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

This is an employment discrimination case.  Plaintiff, who is proceeding pro se, alleges age

discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621

et seq.  Presently before the Court is Defendant's Motion for Summary Judgment (Document # 58).

Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th. Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in dismissal

of his Complaint.  Plaintiff timely filed a Response (Document # 63) and Defendant filed a Reply

(Document # 64).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions

of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because the Motion for

Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review

by the district judge.

## II.    FACTS

Plaintiff is a certified public accountant whose most recent employment was as a managing

shareholder for his North Carolina accounting firm, McLelland, Rutherford & McKenzie, P.A.

Plaintiff Dep. at 12. He maintained this position for seven years. Id. at 15-16. In 2004, he sold his client files in a deal that earned him income until the end of 2009, dissolved the firm, and relocated to North Myrtle Beach. Id. at 13, 22, Ex. 1; Plaintiff Ex. 3 (attached at Document # 18).[1] He later decided to return to work in governmental accounting rather than public accounting. He chose governmental accounting because he felt that was where a lot of his background and experience was and he "figured it would be a breeze compared to what [he] had been doing in public accounting." Id. at 64-65.

Starting in late 2007, Plaintiff applied for part-time work at local CPA firms. Id. at 80, Exs. 6-7. He mailed cover letters to those CPA firms, but not resumés, because he thought his cover letters provided sufficient information to obtain an interview. Id. at 81-82. The first sentence in the letters reads, "I am a 59 year old white male and a nonsmoker in excellent health." Id. at 79-80, Exs. 6-7. Plaintiff did not receive responses to these inquiries. Id. at 81.

In 2007, Plaintiff also applied for accounting positions with several South Carolina governments – Horry County, the City of Myrtle Beach, the City of Charleston (2 positions), and the City of North Myrtle Beach (2 positions). Id. at 68, 78, Exs. 5, 13, 14, 16, 19, 32, 36. None of the governmental entities interviewed Plaintiff. Id. at 68. He subsequently filed charges of discrimination against all of the governmental entities except for the City of Charleston, alleging age and/or gender discrimination depending on the age and gender of the successful applicants. Id. at 127-28, 133-34, 140, Exs. 29-30, 35. The South Carolina Human Affairs Commission and the EEOC issued "no cause" determinations on all of the charges. Id. at 141-44, Exs. 37-39, 41-42. Plaintiff chose to sue the City

---

[1] Plaintiff's Exhibits are not attached to his Response, but instead are located throughout the docket.

of North Myrtle Beach only.  Id. at 54.

On May 18, 2007, the City posted two open accounting positions in its Finance Department – Accounting Supervisor and Accountant-Enterprise Funds. The Department was (and is still) led by Randy Wright (age 49 at the time), Finance Director; and Diane Shell (age 53 at the time), Assistant Finance Director. Wright Decl. ¶¶ 2-3, 5, 10.  Plaintiff applied for the "Accounting Supervisor" position on May 24, 2007, and listed $58,000 as his minimum acceptable salary. Plaintiff Dep. at 105-06, Ex. 14.  Under the section on "Employment Data," he listed his prior accounting firm as his last employer and described his duties as"Public Accounting firm: Prepared tax returns for individuals and businesses; Performed audits for businesses and governmental entities; Prepared and issued financial statements; Management advisory services and consulting." Id. at Ex. 14. He stated his last salary was "$100,000+." Id.

On June 9, 2007, Plaintiff mailed a letter to Randy Wright expressing his disappointment that he had not received a response to his application for "Accounting Manager." He then stated, "For your information, I am a white male, fifty-nine years old, and an avid nonsmoker in excellent health. I work out regularly at the Aquatic Fitness Center."  Id. at 108, Ex. 15. During his deposition, Plaintiff explained that he included his age, race, gender, and health condition in his cover letters and in the letter to Wright because he wanted to describe himself, but conceded that none of those characteristics were relevant or forecasted his ability to do the job.  Id. at 84-86, 108-09.

Also on June 9, Plaintiff applied for the other accounting position the City had posted – Accountant-Enterprise Funds. Id. at 109, Ex. 16. He did not, however, submit a cover letter or a resumé with either application. Id. at 105-06, Exs. 14, 16.  The Accountant–Enterprise Funds position was a new position Wright had created, and therefore, he was not sure of all the duties the position

would encompass. His plan was that it would be a mid-level accounting position responsible for city-wide accounting duties and with primary responsibility for accounting of the City's enterprise funds. Wright hoped to find an applicant with governmental accounting experience, even though that is traditionally hard to find. Wright Decl. ¶¶ 7-8. Thus, the requirements listed on the posting for qualified applicants were a Bachelor's degree in accounting and two years of accounting experience or an equivalent combination of education, training, and experience. The posted salary range was $40,515 to $60,772. Plaintiff Dep. at Ex. 16. Wright planned to hire an applicant at the minimum of the salary range so that he could stay within the Department budget. Wright Decl. ¶ 6.

Because of the nature of the positions and timing of the postings, Wright reviewed the applications for both positions at the same time. He separated Plaintiff's applications from the stack for further review. After several days of consideration, Wright decided not to interview Plaintiff for the Accountant–Enterprise Funds position because he assumed Plaintiff's minimum acceptable salary was the same as what Plaintiff had listed on his previous application–$58,000–which was more than Wright had budgeted for the position. Wright Decl. ¶¶ 6,11; Plaintiff Dep. at Exs. 14, 16. On the Accountant-Enterprise Funds application, Plaintiff checked "no" to the inquiry of whether there was a minimum salary he would accept." Id. at Ex. 16. Wright assumed that $58,000 was the minimum salary that Plaintiff would accept for the Accountant-Enterprise Funds position since that was the minimum salary he would accept for the Accounting Supervisor position. Wright Dec. ¶ 12.

Before applying for the Accountant-Enterprise funds position, Plaintiff suspected his minimum salary requirement was excluding him from consideration for the Accounting Supervisor position. Plaintiff Dep. at 66. Therefore, he decided to apply for the Accountant-Enterprise Funds position, which he felt would be a lot easier than a supervisory position, so he felt "he could probably take it at

the very low end of the scale." Id.  Accordingly, he checked "no" to the inquiry of whether there was

a minimum salary he would accept  when he submitted the Accountant-Enterprise Funds application.

Plaintiff Dep. at 65-66.

Wright avers that his main reason for declining to interview Plaintiff was what Wright assumed

to be Plaintiff's minimum salary requirement.  Wright Dec. ¶ 14.  Additionally, he viewed Plaintiff's

application and June 9 letter as somewhat arrogant, and believed Plaintiff would have difficulty

transitioning from being the person in charge to working as a subordinate accountant and reporting to

the Assistant Finance Director, Diane Shell, who is not a licensed CPA. The position was for a "nuts

and bolts" person, not a manager. Wright did not believe Plaintiff would work well as a team member

with the other Department employees. Wright Decl. ¶¶ 12-13.  Because he eliminated Plaintiff from

consideration based upon the above concerns, Wright did not review Plaintiff's qualifications or

compare them to the other applicants.[2] Id. ¶ 14.

Lauren Jones was the successful applicant for the position.[3]  Wright was acquainted with

Jones's family and believed Jones had good business skills from working in the family's retail

business.  Wright Decl. ¶ 22.  She submitted a resumé and a cover letter along with her application

demonstrating that she had an accounting degree and was employed as an accountant in the North

Carolina Office of the State Controller. She had previously interned there before accepting a full-time

position. In her time there, she had approved, reconciled, and keyed journal vouchers for North

_____

[2]Wright states that after Plaintiff filed the present action, he reviewed his application and did
not see that Plaintiff had any governmental accounting experience relevant to the position.  Wright
Dec. ¶ 14.

[3]Plaintiff approximates Jones' age to be 23 at the time of her application.  However, there is
no information in the record to support this approximation.  Nevertheless, it is undisputed that Jones
falls outside the protected age group.

Carolina agencies; worked with the cash management system; reconciled bank statements; supervised federal grants; and most important, had assisted in the preparation of the 2006 and 2007 Comprehensive Annual Financial Report ("CAFR") for the state. Id. at ¶¶ 19, 23, Ex. 2. Jones listed a minimum acceptable salary of $40,000, slightly above the $39,500 floor of the salary range for the position. Id. at ¶ 24, Ex. 2.

Wright decided to interview Jones, along with four other applicants, two of whom were current City employees. Id. ¶ 19. Wright's policy is to interview all internal applicants, as a courtesy, regardless of their apparent qualifications for the position. The third interviewee, Steven Matthews, had an accounting degree and experience working for the Ohio Department of Job and Family Services, while Kurt Rothenberg had an accounting degree, an MBA, and experience working as a controller, which is the private industry equivalent of a finance director. His minimum acceptable salary was $45,000. Id. at ¶¶ 20-21, Ex. 2. Wright and Shell conducted the interviews and agreed Jones was the best fit for the position. In addition to her experience and education, she had good computer skills and had been working for a governmental entity under the new GASB reporting requirements. She also received positive recommendations from her previous employer. The City hired Jones at a salary of $40,518.40 per year. Thus, Wright felt he was hiring a well-qualified person for a price the City could afford. Id. at ¶¶ 23-25.

Plaintiff testified that he read an article published by the AARP, and "it changed my thinking on the whole issue, and I realized that, hey, you know, what's happening to me is a universal problem, and I decided to do something about it." Plaintiff Dep. at 65. Plaintiff subsequently requested information from the City regarding the persons hired for the accounting positions. Id. at 122-25, Ex. 20. After receiving the requested information, Plaintiff submitted an "Initial Inquiry Questionnaire"

with the South Carolina Human Affairs Commission ("SHAC"), alleging that the City, through Wright, had discriminated against him based on age and gender in the Accounting Supervisor position, but on age only in failing to hire him for the Accountant-Enterprise Funds position. Id. at 128-32, Exs. 24, 25, 27, 28. On October 9, 2007, Plaintiff filed a charge of discrimination against the City on the basis of gender and age discrimination. Id. at 133-34, Ex. 29. At that time, Plaintiff was 59 years of age. Id. at Ex. 29. SHAC and the EEOC investigated and issued "no cause" determinations on the charge. Id. at 142-43, Exs. 38-39. On October 9, 2008, Plaintiff filed the present action claiming age discrimination only with regard to the Accountant-Enterprise Funds position.

## III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture,

speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Plaintiff asserts that Defendant discriminated against him because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[4] applies to claims pursuant to the ADEA. Hill v. Lockheed Martin Logistics Mgmt., Inc.,

---

[4]The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

354 F.3d 277, 285 (4th Cir.2004). Under the analysis set forth in <u>McDonnell Douglas</u>, Plaintiff has the initial burden of demonstrating a <u>prima</u> <u>facie</u> case of discrimination. <u>Bryant v. Bell Atlantic Maryland, Inc.</u>, 288 F.3d 124, 133 (4th Cir. 2002). To establish a <u>prima</u> <u>facie</u> case of discriminatory failure to hire, Plaintiff must show (1) he is a member of the protected class (at least 40 years old), (2) he applied for the position in question, the Accountant-Enterprise Fund position, (3) he was qualified for the position, and (4) he was rejected for the position in favor of someone outside the protected class or there is some other evidence giving rise to an inference of unlawful discrimination. <u>Mackey v. Shalala</u>, 360 F.3d 463, 468 (4th Cir. 2004).

If Plaintiff establishes a <u>prima</u> <u>facie</u> case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the Plaintiff's discharge. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination <u>vel</u> <u>non</u>." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)(citing <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. <u>Reeves</u>, 530 U.S. at 143.

Defendant concedes that Plaintiff can establish a <u>prima</u> <u>facie</u> case of discrimination because a younger candidate was selected for the Accountant-Enterprise Fund position.

Defendant produces two reasons for its decision not to hire Plaintiff–his minimum salary requirement and Wright's opinion that Plaintiff was arrogant and could not work as a team member. Defendant asserts that the primary reason for its decision was what Wright assumed to be Plaintiff's minimum salary requirement, $58,000, which was $17,485 higher than what Wright was budgeting for the position. Wright avers that his primary concern in filling the position was his department's budget. He planned to hire an applicant at the minimum of the salary range ($40,515) so that he could stay within the budget.

Plaintiff argues that Defendant's primary reason for declining to hire him for the Accountant-Enterprise Fund position, his salary requirement, is simply pretext for a discriminatory reason because he did not list a minimum salary requirement on his application for the Accountant-Enterprise Fund position. The record reveals that Plaintiff listed $58,000 as the minimum salary he would accept on his application for the Accounting Supervisor position, which he submitted on May 24, 2007. Later, on June 9, 2007, Plaintiff submitted a separate application for the Accountant-Enterprise Funds position. He checked "no" to the question of whether there was a minimum salary he would accept. Wright reviewed the applications for both positions together. Wright avers that he assumed Plaintiff held the same minimum salary requirement for both positions.

Although Wright indicates he assumed that Plaintiff's minimum acceptable salary for the Accountant-Enterprise Funds position was $58,000, this is inconsistent with Plaintiff's response on the application for that position. Plaintiff clearly indicated that he had no minimum salary requirement for the Accountant-Enterprise Funds positions by checking "no" to the question, "Is there a minimum salary you would accept?" While Wright's assumption may very well have been a mistake, viewing the evidence in the light most favorable to Plaintiff, an issue of fact exists as to whether the primary

reason given for declining to interview Plaintiff for the Accountant-Enterprise Funds position–his salary requirement–is pretext for a discriminatory reason.

Defendant also notes that, after reading Plaintiff's applications and June 9, 2007, letter, Wright found Plaintiff to be arrogant and did not want that kind of person in his department. He felt that Plaintiff would not be able to transition from being the person in charge to working as a subordinate accountant. He provides this as the second, less important reason for declining to interview Plaintiff for the Accountant-Enterprise Funds position. Plaintiff argues that Wright cannot justify such a conclusion without having met or interviewed him. Again, viewing Plaintiff's applications and his June 9, 2007, letter in conjunction with the issue of fact discussed above and in the light most favorable to Plaintiff, a question of fact exists as to whether this reason is pretext for a discriminatory reason.

Because a question of fact exists as to whether Defendant's given reasons for not hiring Plaintiff are pretext for a discriminatory reason, summary judgment is not appropriate. Based upon the evidence presented, a reasonable juror could conclude that Defendant declined to hire Plaintiff for the Accountant-Enterprise Funds position because of his age. Therefore, Defendant's Motion for Summary Judgment should be denied.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 58) be denied.

                 s/Thomas E. Rogers, III
                 Thomas E. Rogers, III
                 United States Magistrate Judge

July 9, 2010
Florence, South Carolina

**The parties are directed to the important notice on the following page.**