IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ronald Dale McLelland, | ) | |
| | ) | C.A. No. 4:08-cv-03430-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| City of North Myrtle Beach, | ) | |
| | ) | |
| Defendant. | ) | |

This is an employment discrimination case brought by the *pro se* Plaintiff under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* The Magistrate Judge has entered his Report and Recommendation [Entry #68] made in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02 for the District of South Carolina, wherein he recommends that Defendant's Motion for Summary Judgment [Entry # 58] be denied.

After a thorough review of the record in this matter, the applicable law, the Magistrate Judge's Report and Recommendation, and Defendant's objections, the court declines to adopt the Magistrate Judge's Report and Recommendation for the reasons stated below.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

# FACTS

The facts viewed in a light most favorable to Plaintiff Ronald Dale McLelland ("McLelland") are as follows.

McLelland is a certified public accountant whose most recent employment was as a managing shareholder for his North Carolina accounting firm, McLelland, Rutherford & McKenzie, P.A., a position he maintained for seven years. In 2004, McLelland dissolved the firm and relocated to North Myrtle Beach, South Carolina. In 2007, McLelland decided to return to work in governmental accounting rather than public accounting because of his background and experience and because he "figured it would be a breeze compared to what [he] had been doing in public accounting." (Pl. Dep. at 64-65). In 2007, McLelland began to apply for part-time work at local CPA firms by mailing cover letters, in which the opening sentence read, "I am a 59 year old white male and a nonsmoker in excellent health."( *Id.* at 79-80, Exs. 6-7). McLelland did not receive responses to these inquiries.

McLelland also applied for accounting positions with several South Carolina governmental entities, including Horry County, the City of Myrtle Beach, the City of Charleston (two positions), and the City of North Myrtle Beach (the "City") (two positions). None of these entities interviewed McLelland.[1]

On May 18, 2007, the City posted two open accounting positions in its Finance Department: Accounting Supervisor and Accountant-Enterprise Funds. Randy Wright ("Wright") heads the

---

[1] McLelland filed similar actions against all of these governmental entities except for the City of Charleston, alleging age or gender discrimination, depending on the age and gender of the successful applicants. The South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission issued "no cause" determinations on all of the charges. McClelland has only brought an action in federal court against the City of North Myrtle Beach.

Finance Department as the Finance Director and was age 49 in 2007; and Diane Shell ("Shell") is the Assistant Finance Director and was age 53 in 2007. On May 24, 2007, McLelland applied for the Accounting Supervisor position. On his application, he listed $58,000 as his minimum acceptable salary. Under the section entitled "Employment Data," McLelland listed his prior accounting firm as his most recent employer and described his duties as "Public Accounting firm: Prepared tax returns for individuals and businesses; Performed audits for businesses and governmental entities; Prepared and issued financial statements; Management advisory services and consulting." (Pl. Dep. at 105-6, Ex. 14). He also stated that his previous salary was "$100,000+." (*Id.*).

On June 9, 2007, McLelland mailed a letter to Wright expressing disappointment that Wright had not responded to his application. In his letter, he stated, "For your information, I am a white male, fifty-nine years old, and an avid nonsmoker in excellent health. I work out regularly at the Aquatic Fitness Center."(*Id.* at 108, Ex. 15). McLelland included his age, race, gender, and health condition in his cover letters and in the letter to Wright because he wanted to describe himself, although he concedes that these characteristics were neither relevant to the position nor forecasted his ability to do the job. (*Id.* at 84-86, 108-09).

On the same date that he mailed the letter, McLelland applied for the other posted accounting position of Accountant-Enterprise Funds. McLelland did not submit a cover letter or a resumé. Wright had recently created the Accountant–Enterprise Funds position, and therefore, he had not yet determined completely the duties of the position. He intended for the position to be a mid-level accounting position responsible for city-wide accounting duties, primarily for accounting the City's enterprise funds. Wright hoped to find an applicant with previous governmental accounting

3

experience. Consequently, the requirements for qualified applicants listed in the job posting were a Bachelor's degree in accounting and two years of accounting experience or an equivalent combination of education, training, and experience. The posted salary range was $40,515 to $60,772. However, Wright claims that he planned to hire an applicant at the minimum of the salary range for budgetary reasons. On this particular application, McLelland checked "no" to the inquiry concerning the minimum salary he would accept. (*Id.*).

Wright avers that he assumed that McLelland would accept a minimum salary of $58,000 for the Accountant-Enterprise Funds position because he put this amount on his application for the Accounting Supervisor position. As a result, he chose not to interview McLelland for the Accountant-Enterprise Funds position. In addition, Wright avers that he viewed McLelland's applications and the June 9, 2007 letter as arrogant, and he believed McLelland would have a difficult transition from a supervisory role at his previous employment to a subordinate position reporting to the Assistant Finance Director who is not a licensed CPA. Furthermore, Wright allegedly did not believe McLelland would work well as a team member with the other employees in the Financial Department. Having eliminated McLelland from consideration, Wright did not review his qualifications or compare them to the other applicants.

Ultimately, Wright hired Lauren Jones ("Jones") for the Accountant-Enterprise Funds position.[2] Wright was acquainted with Jones' family and believed she had strong business skills from previously working in her family's retail business. She submitted a resumé and a cover letter along with her application demonstrating that she had an accounting degree and was employed as an accountant in the North Carolina Office of the State Controller. She had previously interned there

---

[2] Although it is not clear from the record Jones' age on the date Wright hired her, it is undisputed that she falls outside of the protected age group.

4

before accepting a full-time position. Her prior job responsibilities involved approving, reconciling, and keying journal vouchers for North Carolina agencies; working with the cash management system; reconciling bank statements; supervising federal grants; and assisting in the preparation of the 2006 and 2007 Comprehensive Annual Financial Report for the state. Jones listed a minimum acceptable salary of $40,000.

Wright interviewed Jones, along with several other applicants, two of whom were current City employees, as his policy is to interview all internal applicants as a courtesy regardless of their apparent qualifications for the position. Interviewee Steven Matthews had an accounting degree and experience working for the Ohio Department of Job and Family Services, and interviewee Kurt Rothenberg had an accounting degree, an MBA, and experience working as a controller, which is the private industry equivalent of a finance director. Kurt Rothenberg stated that his minimum acceptable salary was $45,000. Both Wright and Shell conducted the interviews and agreed Jones was the best fit for the position. In addition to her education, Wright believed that Jones had strong computer skills and experience working for a governmental entity under the new reporting requirements. She also received positive recommendations from her previous employer. Therefore, the City hired Jones at a salary of $40,518.40 per year.

McLelland then requested information from the City regarding the persons hired for the accounting positions. After receiving the requested information, he submitted an "Initial Inquiry Questionnaire" with the South Carolina Human Affairs Commission, alleging that the City, through Wright, had discriminated against him based on age and gender in response to his application for the Accounting Supervisor position, but on age only by failing to hire him for the Accountant-Enterprise Funds position. On October 9, 2007, McLelland filed a charge of discrimination against

5

the City on the basis of gender and age discrimination. At the time of filing, McLelland was 59 years of age. The South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission investigated McLelland's claims and issued "no cause" determinations. On October 9, 2008, McLelland filed the present action claiming age discrimination only with regard to the Accountant-Enterprise Funds position.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the non-moving party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *Celotex v. Catrett*, 477 U.S. 317, 324 (1986) (holding that Rule 56(e) permits a proper summary judgment motion to be opposed by any evidentiary materials listed therein, except for the pleadings themselves). Rather, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id.* In other words, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." *Celotex*, 477 U.S. at 322; *see also Cray v. Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05 DSC. Furthermore, the Fourth Circuit Court of Appeals has held the following:

> In assessing a motion for summary judgment, a court must perform a dual inquiry into the genuineness and materiality of any purported

> factual issues. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. While [g]enuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice.

*Guinness PLC v. Ward*, 955 F.2d 875, 882-83 (4th Cir. 1992) (internal quotation marks and citations omitted). The Federal Rules of Civil Procedure promote the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases, and one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c).

A federal court must liberally construe pleadings filed by *pro se* litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

**C. Age Discrimination**

McLelland asserts that Defendant discriminated against him because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to claims made pursuant to the ADEA. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).[3] Under the analysis set forth in *McDonnell Douglas*, the plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). To establish a *prima facie* case of discriminatory failure to hire, a plaintiff must show (1) he is a member of the protected class (at least 40 years old), (2) he applied for the position in question, (3) he was

---

3 The *McDonnell Douglas* analysis was refined in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

qualified for the position, and (4) he was rejected for the position in favor of someone outside the protected class or there is some other evidence giving rise to an inference of unlawful discrimination. *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the plaintiff's discharge or failure to hire. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Mackey*, 360 F.3d at 468. This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Once a defendant has met its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non*." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the legitimate reason produced by the defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143.

### 1. Prima Facie Case

In the present case, McLelland can establish a *prima facie* case of age discrimination because he was rejected for the position in favor of a younger candidate outside of the protected age group.

### 2. Pretext

As to the second branch of the analysis, the City has produced several reasons for its decision not to hire McLelland: his minimum salary requirement, Wright's opinion that he was arrogant, and Wright's opinion that McLelland would not work well with the other employees in a subordinate role. In

recommending the denial of summary judgment, the Magistrate Judge found that "[w]hile [the Finance Director, Randy] Wright's assumption may very well have been a mistake, viewing the evidence in the light most favorable to McLelland, an issue of fact exists as to whether the primary reason given for declining to interview McLelland for the Accountant-Enterprise Funds position – his salary requirement – is pretext for a discriminatory reason." (R & R at 10-11). The Magistrate Judge also stated that an issue of fact was created by McLelland's opinion that the City could not determine he was arrogant and likely unwilling to work as a team from McLelland's submissions to Wright for the job, but would instead have had to interview him before making that determination. The City objects to the Report and Recommendation arguing that there is no genuine issue of material fact in this case warranting the denial of summary judgment.

The courts "do not sit as super personnel departments second guessing an employer's perceptions of an employees qualifications." *Smith v. Univ. of North Carolina*, 632 F.2d 316, 345-46 (4th Cir. 1980). In assessing whether evidence of discrimination exists, a court should consider the employer's reasoning for not selecting the applicant, rather than simply comparing his or her qualifications with those of the successful applicant. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered" *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Furthermore,

> [W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.
>
> . . .
>
> [W]e have repeatedly held that in a wrongful discharge action it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.

9

> In short, we do not sit to appraise [the employer's] appraisal. Rather, our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory.

*Hawkins v. Pepsi Co*, 203 F.3d 274, 279-80 (4th Cir. 2000) (internal quotations and citations omitted). In addition,

> Simply because [the employee] presents evidence that the defendant['s] justification for [its] adverse employment decision may be false does not mean that [the employee's] evidence demonstrates pretext... "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason ... is correct... It is not enough to disbelieve the [employer]."

*Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000)) (internal citations omitted). Rather, a plaintiff must demonstrate that a reasonable jury could "believe [his] explanation of intentional... discrimination." *Id.*

The City asserts that the primary reason for Wright's decision was what Wright assumed to be McLelland's minimum salary requirement, $58,000, which was $17,485 higher than Wright budgeted for the position. Wright avers that his primary concern in filling the position was his department's budget; therefore, he planned to hire an applicant at the minimum of the salary range ($40,515). McLelland argues that Wright's stated reason for declining to hire him for the Accountant- Enterprise Fund position is simply pretext for a discriminatory reason because he did not list a minimum salary requirement on his application for the Accountant-Enterprise Fund position.

From the record before it, the court finds that the City has produced a plausible reason for deciding not to interview McLelland, and the reason was not based on age. On the first application, McLelland stated a salary range that was within the posted range of $40,515 to $60,772. He did not place a minimum salary range on the second application. The information that Wright possessed at the time of his decision

establishes that his assumption – whether right or wrong – was sincere; consequently, his good faith belief must be credited. Moreover, McLelland has failed to meet his burden of proving that the City's stated reason was merely a pretext for a discriminatory intent. There is no evidence in the record to rebut Wright's testimony that he reviewed McLelland's two applications and his June 9, 2007 letter to Wright at the same time, and honestly assumed that $58,000 was McLelland's minimum acceptable salary for both positions. The only evidence McLelland offers to rebut Wright's testimony is his *post hoc* explanation that he left out the minimum salary requirement on his application to secure an interview for the second job offering. However, McLelland's explanation, even if true, does not create an issue of fact regarding Wright's apparent belief that McLelland was willing to accept a minimum salary of $58,000. Rather, this information merely establishes that Wright may have been mistaken about McLelland's salary requirements, which does not establish that Wright intentionally discriminated against McLelland based on his age.

Wright has also stated that, after reading McClelland's applications and letter, he perceived McLelland to be arrogant and inferred from his applications and letter he would have difficulty adjusting to a subordinate role. McLelland asserts that Wright could not justify such a conclusion without having met or interviewed him. Again, the Magistrate Judge found that after viewing McLelland's applications and his June 9, 2007 letter in the light most favorable to McLelland and in conjunction with the issue of fact created by McLelland's failure to state a minimum acceptable salary on his application, a question of fact existed as to whether Wright's second stated reason was a pretext for discrimination. Defendant objects to this portion of the Magistrate Judge's recommendation on the grounds that McLelland's opinion as to the City's ability to ascertain his arrogance from his writings cannot create an issue of fact. McLelland asserts that Wright could not have formed an opinion of him without having met or

11

interviewed him. However, the City has met its burden of production by stating a reason for failing to interview McLelland. On the other hand, McLelland has produced no evidence that Wright's stated reason is merely pretext for intentional discrimination outside of his conclusory allegations that Wright would be unable to make such a determination from the documents that he had before him during the interview process.

There is no support for the proposition that an experienced manager such as Wright was incapable of deciphering aspects of McLelland's personality from his written word. McLelland's disagreement with Wright's honestly held opinion does not create an issue of fact. Generally, "[c]onclusory assertions that [the employer's] state of mind and motivation are in dispute are not enough to withstand summary judgment." *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1998) (citing *Zoby v. American Fidelity Co.*, 242 F.2d 76, 80 (4th Cir. 1957)).

In addition, the record should be viewed in its entirety. While considering two applications from a CPA, who just two years previously had earned over $100,000 per year as the managing partner of his CPA firm, for a nonsupervisory position where the successful applicant earns approximately $40,000 per year, Wright noticed that McLelland had listed on one of the applications that he wished to earn at least $58,000 per year. Wright had before him an application from an applicant that he knew personally, who had directly-related governmental accounting experience (which McLelland did not have), and who stated on her application that she wanted to earn only $40,000. The other three applicants seriously considered for the position stated minimum acceptable salaries under $45,000 on their applications. Furthermore, Wright is 51 years old, and the Assistant Finance Director Wright hired is 55 years old. Moreover, 57% of the persons hired by Wright and currently employed by the Finance Department are over the age of 40. Accordingly, there is no evidence from which to infer discriminatory intent, and there is no evidence that

creates a genuine issue of material fact concerning the City's legitimate, nondiscriminatory reasons for failing to hire McLelland. Therefore, the court now finds that the City's Motion for Summary Judgment should be granted.

## CONCLUSION

Based on the foregoing, the court finds that the recommendation of the Magistrate Judge is reversed, and it is now **ORDERED** that Defendant's Motion for Summary Judgment [Entry # 58] **is GRANTED**.

**IT IS SO ORDERED**.

J. Michelle Childs

United States District Judge

September 21, 2010
Greenville, South Carolina